# United States Court of Appeals
# for the Federal Circuit

---

EDGEWELL PERSONAL CARE BRANDS, LLC,
INTERNATIONAL REFILLS COMPANY, LTD.,

*Plaintiffs-Appellants,*

— v. —

MUNCHKIN, INC.,

*Defendant-Appellee.*

---

*On Appeal from the United States District Court for the
Central District of California in No. 2:18-cv-03005-PSG-JPR,
Honorable Philip S. Gutierrez, United States District Judge*

---

## PETITION FOR REHEARING OF
## DEFENDANT-APPELLEE

TRAVIS W. MCCALLON
LUKE MERIWETHER
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
(816) 292-2000
travis.mccallon@lathropgpm.com
luke.meriwether@lathropgpm.com

*Counsel for Defendant-Appellee*

APRIL 7, 2021

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 2020-1203 |
| **Short Case Caption** | Edgewell Personal Care Brands v Munchkin, Inc. |
| **Filing Party/Entity** | Munchkin, Inc. / Appellee |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/07/2021

Signature: /s/ Travis W. McCallon

Name: Travis W. McCallon

i

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Munchkin, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐　None/Not Applicable　　　☐　Additional pages attached

| | | |
|---|---|---|
| Lathrop GPM LLP | R. Cameron Garrison | Ronald A. Valenzuela |
| Eric D. Sidler | Michael J. Abrams | A. Justin Poplin |
| Pullman & Comley | Robert D. Hinton | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑　None/Not Applicable　　　☐　Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑　None/Not Applicable　　　☐　Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION AND POINTS OF LAW AND FACT
OVERLOOKED ....................................................................................... 1

ARGUMENT ................................................................................................ 2

    I.   The Court should grant rehearing and affirm the district
        court's grant of summary judgment based on the "engage"
        limitation. ......................................................................................... 2

        A. The Court overlooked the district court's grant of
           summary judgment on the '029 patent based on the
           "engage" limitation. ................................................................. 3

        B. The Court's affirmance of the district court's
           construction of "engage" requires that the Court affirm
           summary judgment, as well. ................................................... 7

    II.  The Court should also grant rehearing and affirm the
        district court's grant of summary judgment on the '029
        patent based on the "tear-off section" limitation. ........................ 10

        A. The Court overlooked the district court's analysis in
           support of summary judgment based on the "tear-off
           section" limitation. ............................................................... 10

        B. The district court did not conduct a "binary" analysis
           regarding the "tear-off section" limitation, and this
           Court should therefore affirm summary judgment. .............. 14

ADDENDUM

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATIONS

# TABLE OF AUTHORITIES

*Page(s)*

### *Cases*

*Conoco, Inc. v. Energy & Envtl. Intern., L.C.,*
  460 F.3d 1349 (Fed. Cir. 2006) ............................................................. 9

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.,*
  16 F.3d 394 (Fed. Cir. 1994) ......................................................... 15, 16

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
  363 F.3d 1263 (Fed. Cir. 2004) .......................................................... 19

## INTRODUCTION AND
## POINTS OF LAW AND FACT OVERLOOKED

In reversing the district court's grant of summary judgment of non-infringement of the '029 patent, the Court overlooked two critical sets of facts and law, both of which independently warrant rehearing:

1.    the Court overlooked the district court's grant of summary judgment of non-infringement of the '029 patent based on the "engage" limitation;

2.    the Court overlooked the district court's stated reasoning in support of its grant of summary judgment of non-infringement of the '029 patent based on the "tear-off section" limitation.

The district court's ruling regarding the "engage" limitation formed a separate and independent basis for summary judgment with respect to the Second Generation Cassettes at issue, and Edgewell affirmatively appealed that ruling. Thus, the Court cannot properly reverse the district court's judgment without addressing this issue. Moreover, the Court's affirmance of the district court's construction of the "engage" term necessitates that it affirm the district court's finding of non-infringement based on that term, as Edgewell's infringement

position was dependent upon its now-rejected claim construction position.

The district court's ruling regarding the doctrine of equivalents and the "tear-off section" limitation contains explicit reasoning following the function-way-result test. Yet the Court grounded its reversal of the district court's doctrine of equivalents conclusion on the district court's alleged failure to conduct a function-way-result analysis (in the context of the separate "annular cover" limitation). This disconnect not only means that the Court overlooked critical reasoning from the district court regarding the "tear-off section," but that the district court's analysis in fact satisfies the very standard that the Court called for. Thus, the Court should affirm the district court's finding of non-infringement on this basis, as well.

## ARGUMENT

## I. The Court should grant rehearing and affirm the district court's grant of summary judgment based on the "engage" limitation.

The district court granted summary judgment of non-infringement of the '029 patent on two separate and independent bases. The first basis, concerning both the Second and Third Generation Cassettes, revolved around the nature of the cover, as claimed via two separate

terms—"annular cover" and "tear-off section." (Appx39-42.) The second basis, concerning the Second Generation Cassettes, revolved around the relationship of the cover to the cassette body, as claimed via the term "engage." (Appx41.) While the Court addressed and affirmed the district court's construction of "engage," it failed to address the district court's grant of summary judgment based upon the "engage" limitation.

## A. The Court overlooked the district court's grant of summary judgment on the '029 patent based on the "engage" limitation.

The Court's opinion includes no analysis of the district court's grant of summary judgment based on the "engage" limitation. Rather, after affirming the district court's construction of "engage" to mean "attach" (Op., p. 10), the Court discussed *only* the district court's grant of summary judgment based on the "annular cover" and "tear-off section" limitations.

As an initial matter, it is not clear that Court properly appreciated that Edgewell affirmatively and separately appealed the district court's grant of summary judgment regarding the "engage" limitation. In its opinion, for example, the Court recited only that Edgewell challenged the district court's doctrine of equivalents conclusions regarding the

"annular cover" and "tear-off section" limitations. (Op., p. 9.) But Edgewell separately appealed the district court's conclusion regarding the "engage" limitation, as that conclusion independently supported summary judgment in relation to the Second Generation Cassettes. Thus, for example, Edgewell explained in its opening brief that the district court found that the shrink wrap and cassette body in the Second Generation Cassettes "were not, as a matter of law, 'engaged' as that term had been construed by the court." (Blue Br., p. 34.) It then separately addressed the district court's grant of summary judgment on that basis, arguing that "the district court erred in analyzing the 'engage' limitation, misapplying the summary judgment standard" and that the district court's construction of "engage" was "wrong, and should be reversed, and so too should the improper award of summary judgment."[1] (Blue Br., p. 65; Grey Br., p. 33.)

---

[1] In addition to addressing Edgewell's appeal of the district court's grant of summary judgment based on the "engage" limitation, Munchkin on appeal also raised an alternative basis for affirmance related to the "engage" limitation. The district court did not rule on this alternative basis, and Munchkin does not include that issue in its current request for rehearing.

The Court's apparent failure to appreciate this separate "engage" argument from Edgewell led the Court to overlook this basis for summary judgment in its discussion and conclusion. For example, after addressing the constructions of terms at issue, the Court began its discussion of summary judgment by stating that "the district court erred in granting summary judgment of noninfringement of the '029 patent under the doctrine of equivalents *on the basis that the claimed 'annular cover' and 'tear-off' would be vitiated and rendered meaningless*." (Op., p. 10 (emphasis added).) It similarly began the paragraph immediately following by again stating that "the district court erred in concluding that Edgewell's theory of *infringement under the doctrine of equivalents vitiates or renders meaningless the 'annular cover' claim element*." (Op., p. 11 (emphasis added).) And the paragraph after that begins with the Court's explanation that "[t]he *element at issue is the claimed 'annular cover.'*" (Op., p. 12 (emphasis added).) Nowhere in this discussion or thereafter did the Court mention, let alone analyze, summary judgment based on the "engage" limitation.

Moreover, in its concluding paragraph regarding the '029 patent, the Court summarized that Edgewell's purported evidence "is sufficient

to create a genuine issue of material fact for the jury to resolve and, therefore, is sufficient to preclude summary judgment of noninfringement under the doctrine of equivalents." (Op., p. 13.) Notably, however, the district court's grant of summary judgment concerning the "engage" limitation was not based on the doctrine of equivalents (Appx41), and Edgewell made no claim and presented no evidence concerning the doctrine of equivalents in relation to that limitation (*see* Blue Br., 65-66; Grey Br., 30-34). Indeed, Edgewell's expert, Mr. Jobin, conducted no function-way-result or insubstantial difference analyses for "engage," but rather simply stated that in his opinion the cover does "engage" the body. (*See e.g.* Op., pp. 12-13.) Thus, it is impossible for the Court's conclusion regarding Edgewell's doctrine of equivalents arguments to even implicitly apply to the separate "engage" element.

The end result is that the district court's grant of summary judgment on the basis of the "engage" limitation still stands as unaddressed. This is a material oversight, because the district court's conclusion independently supports summary judgment of non-infringement for the Second Generation Cassettes.

**B.** **The Court's affirmance of the district court's construction of "engage" requires that the Court affirm summary judgment, as well.**

Rehearing is necessary to correct the Court's broad reversal of summary judgment because the Court's affirmance of the construction of "engage" dictates that it affirm summary judgment based on that limitation, as well. Indeed, Edgewell's summary judgment position is grounded solely on its alternate construction of "engage," which this Court rejected. Moreover, allowing Edgewell to prevail would be to countenance its fundamental change of position on appeal.

Edgewell explicitly stated its summary judgment position regarding the "engage" limitation in its briefing on appeal: "When the facts are viewed in a light most favorable to Edgewell, there is ample evidence that *the shrink wrap and cassette body are in contact with one another and thus 'engaged.'*" (Blue Br., p. 66 (emphasis added).) This position cannot be squared with this Court's determination on appeal that "engage" means "attach." (Op., p. 10.) Indeed, the Court explicitly stated that "the plain language of the claim requires more than mere contact." (Op., 10.) This finding alone, and on its face, is a rejection of Edgewell's summary judgment position as argued on appeal.

In addition, Edgewell conspicuously does not argue that the shrink wrap is "attached" to the cassette body, as required by the construction affirmed by this Court. In fact, Edgewell emphatically argued that it "never limited the term 'engage' to mean 'attach,' *nor would that make any sense*," given that in its view "attach" is an "unduly narrow construction." (Grey Br., pp. 30-31 (emphasis added).) It further argued that it "has consistently explained that the term 'engage,' while requiring some contact between the engaged components, *does not require the type of permanent attachment required by the district court's construction*." (Grey Br., p. 31 (emphasis added).) This is why it reasoned (incorrectly) that "[i]tems that are engaged generally are in contact *without necessarily being 'attached.*'" (Blue Br., p. 55 (emphasis added).) Inherent in these arguments is an admission that the shrink wrap in the Second Generation Cassettes is not "attached" to the cassette body. Indeed, if Edgewell believed that the shrink wrap was so "attached," it not only would have said so, but it would have had no reason or need to affirmatively distance itself from the concept of attachment via the foregoing pleas.

Moreover, Edgewell's argument that evidence of "contact" short of "attachment" is somehow sufficient to create a question of fact about whether the shrink wrap and cassette body are "attached" not only conflicts with this Court's construction of "engage," but also with Edgewell's own representations to the district court below. Edgewell below admitted to the district court that "it is not Edgewell's position that [the] term 'engage' is satisfied by 'mere contact.'" (Appx1955.) This is directly contrary to its plainly stated position on appeal that "the shrink wrap and cassette body are in contact with one another and thus 'engaged.'" (Blue Br., p. 66.) This amounts to a change in position regarding the construction of terms, and "a party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below." *Conoco, Inc. v. Energy & Envtl. Intern., L.C.*, 460 F.3d 1349, 1358–59 (Fed. Cir. 2006). The Court should not countenance or entertain such a fundamental change in position from Edgewell.

For all of these reasons, the Court should grant rehearing and affirm the district court's grant of summary judgment of non-infringement of the '029 patent with respect to the Second Generation

cassettes, on the basis that the shrink wrap and cassette body are not "engaged" with one another in those cassettes.

## II. The Court should also grant rehearing and affirm the district court's grant of summary judgment on the '029 patent based on the "tear-off section" limitation.

Apart from the "engage" limitation, the district court also granted summary judgment of non-infringement of the '029 patent (as to both the Second and Third Generation Cassettes) on the basis that there could be no equivalents for the "annular cover" and "tear-off section" limitations as a matter of law. (Appx39-42.) This Court reversed those conclusions, but in doing so relied on reasoning at best applicable *only* to the "annular cover" limitation, and therefore overlooked critical reasoning and analysis set forth by the district court regarding the "tear-off section" limitation.

### A. The Court overlooked the district court's analysis in support of summary judgment based on the "tear-off section" limitation.

The Court's opinion includes no consideration of the district court's reasoning underlying its grant of summary judgment based on the absence of equivalents for the "tear-off section" limitation. Rather, although the Court made reference to the "tear-off section" in its

discussion, the Court focused the substance of its analysis exclusively on the "annular cover" limitation.

For example, in introducing its discussion the Court explained that "the district court erred in concluding that Edgewell's theory of infringement under the doctrine of equivalents vitiates or renders meaningless *the 'annular cover' claim element*," without mentioning the "tear-off section" element. (Op., p. 11 (emphasis added).) Likewise, in the heart of its discussion the Court explained that "the element at issue is *the claimed 'annular cover*,'" again without making any similar statement addressing the "tear-off section." (Op., p. 12 (emphasis added).)

This is in contrast to the district court's summary judgment order, which relied primarily on the "tear-off section." Indeed, opposite this Court's opinion, the district court stated that "[i]n particular, the Court agrees that Plaintiffs' infringement theory would effectively vitiate *the 'tear-off section' limitation*," and made no similar statement regarding the "annular cover." (Appx40 (emphasis).) And in describing its reasoning, the district court reiterated that equivalency was not

possible "given the specific claim limitations, and *particularly the 'tear-off section' limitation*." (Appx40 (emphasis added).)

The district court's focus on the "tear-off section" was critical to its analysis of the substantiality of the differences between the accused cassettes and claimed subject matter, and thus its vitiation conclusion. As the district court explained, the key to the "tear-off section" is that it "specifically contemplate[s] a certain relationship among cover components ('sections')." (Appx40.) And, it further reasoned, "the shrink wrap is not subsequently torn off from an annular cover to which it was physically attached as part of a singular whole, but simply torn from itself in a manner that permits it to be moved away from the cassette walls it previously abutted." (Appx40.) For this reason, the district court concluded, "it would not be appropriate to characterize the shrink wrap and molded plastic combination as presenting an insubstantial change from the claimed subject matter." (Appx40.) In other words, the claimed "relationship among cover components . . . would be rendered meaningless" under Edgewell's position. (Appx40.) The district court made similar findings regarding the blister cap and the Third Generation Cassettes. (Appx42.)

This Court overlooked this analysis and instead found only that the district court "erred in evaluating this element as a binary choice between a single-component structure and a multi-component structure, rather than evaluating the evidence to determine whether a reasonable juror could find that the accused cassettes perform substantially the same function, in substantially the same way, achieving substantially the same result as the claims." (Op., p. 11.) The "this element" that the Court referred to can only possibly be the claimed "annular cover." As noted above, the paragraph in which this statement appears is framed exclusively in relation to the "annular cover." Moreover, the "annular cover" is logically the only element to which a single-component or multi-component "binary" analysis could possibly apply, as no party has ever claimed that the "tear-off section" itself can comprise multiple components. In fact, Edgewell's expert did not dispute that there is no "section" of the cellophane shrink-wrap or the blister cap that tears off. (Appx18487 at ¶36.)

Regardless, it is simply not true that the district court failed to "evaluat[e] the evidence to determine whether a reasonable juror could find that the accused cassettes perform substantially the same function,

in substantially the same way, achieving substantially the same result as the claims." (Op., p. 11.) Indeed, as quoted above, the district court explicitly explained how and why the accused cassettes do not perform at least substantially the same function in substantially the same way as the claimed invention—i.e., because "the shrink wrap is not subsequently torn off from an annular cover to which it was physically attached as part of a singular whole, but simply torn from itself in a manner that permits it to be moved away from the cassette walls it previously abutted." (Appx40.) Because the Court overlooked this basis and reasoning underlying the district court's summary judgment order, rehearing is warranted.

**B.    The district court did not conduct a "binary" analysis regarding the "tear-off section" limitation, and this Court should therefore affirm summary judgment.**

Rehearing and affirmance is necessary because the district court's reasoning that the Court overlooked specifically satisfies the standard that the Court recited in its opinion. The district court's grant of summary judgment based on the "tear-off section" limitation was therefore proper.

As discussed above, the district court did not conduct a "binary" analysis, as this Court found. Rather, the district court specifically conducted a function-way-result analysis and found that the multi-component nature of the accused cassettes fundamentally alters the relationship of the "tear-off section" to the remainder of the claimed components, and thus necessarily alters the "tear-off section's" function, and the way in which it achieves such function, as compared to the claimed invention. And it was this altered function and way—not any simple binary distinction—that the district court found renders the accused cassettes substantially different from the claimed invention.

This is consistent with this Court's precedents. In *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394 (Fed. Cir. 1994), cited by the district court and Munchkin on appeal, this Circuit rejected a doctrine of equivalents position that rendered meaningless *the claimed relationship between components*. The patent there claimed a children's chair with a "stable rigid frame" that is "formed independent of the seat and back panels." *Id.* at 397. The accused device had no separate "stable rigid frame," but the patentee argued that the device itself, once assembled from the seat, back, and side panels, was a "stable rigid

frame" and thus was equivalent to the claimed chair. *Id.* at 397-98. In rejecting this argument, the Court noted that the claim language "specifically requires a stable rigid frame formed of components other than the seat and back panels," and that this language "is not a requirement solely for literal infringement" but also "applies under the doctrine of equivalents." *Id.* at 398-99. The accused device, the Court explained, "lacks both a separate stable rigid frame *and the claimed relationship between that frame and the seat and back panels.*" *Id.* at 400 (emphasis added). It therefore concluded that "[a] stable rigid frame assembled from the seat and back panels is not the equivalent of a separate stable rigid frame which the claim language specifically limits to structures exclusive of seat and back panels." *Id.* at 400.

Just as in *Dolly*, and as the district court recognized in following *Dolly*, the specific relationships between components recited in the claims of the '029 patent are fundamental to the nature of the "tear-off" feature. The "tear-off" is a "tear-off" precisely because it is merely a "section" of the "top portion," and is "initially formed as part of the same structure as the rest of the annular cover." (Appx12-13; OP., pp. 9-10.) This relationship makes the tear-off designed to function in a specific

way—namely, such that it is "torn off from the rest of the annular cover." (Appx12-13.) A device without such a "section . . . formed as part of the same structure as the rest of the annular cover" is a substantially different device—one that, at best, contains some external component (like packaging) that is merely removed in any variety of ways from the cassette itself. Such a device, like the accused cassettes, lacks the relationships between components claimed in the patent, necessarily performs a different function in a different way, and thus falls outside the scope of the claims.

These differences are particularly critical here, given that the '029 patent is exclusively a "tear-off" cover patent. Indeed, the claims are focused on describing the relationship of components that creates the "tear-off" functionality, and there is no other possible area of novelty. The '029 patent, for example, describes prior art that includes every aspect of the '029 patent save a "tear-off section," including a "cassette" with tubing in "an annular space" and "covered by a cap." (Appx105, at 1:22-30.) And Edgewell itself recognized the central nature of the "tear-off" in its briefing on appeal, summarizing the '029 patent as being "directed to an 'annular cover' with a 'tear-off section.'" (Blue Br., p. 18.)

As it further explained, "the inventive cover 'includes a tear-off outwardly projecting section that engages an upper part of the outer wall of the annular body." (Blue Br., p 19.)

Given this central and exclusive focus of the '029 patent, and the nature of the accused cassettes, Edgewell's doctrine of equivalents position renders meaningless the very heart of the invention. As Munchkin noted during oral argument, Edgewell's position is analogous to a patent directed to a milk jug lid with a tear-off seal tab somehow extending to a milk jug with cellophane wrapped over its top. No person would find the two things equivalent or merely insubstantially different, and certainly not when the tear-off seal tab is the critical component and relevant baseline. By focusing on the "annular cover" to the exclusion of the "tear-off section," the Court bypassed this significant context.

Notably, the evidence establishing that the differences between the accused cassettes and claimed invention of the '029 patent are not insubstantial is undisputed. As Munchkin set forth in its briefs, Edgewell does not dispute that the cellophane shrink-wrap on the accused Second Generation and the blister cap on the accused Third

Generation cassettes are (a) made from a different material as the inner portion of the cover; (b) made in a separate manufacturing process from the inner portion of the cover; and (c) applied to the cassette in a different process than the inner portion of the cover. (Appx18486-18487 at ¶¶33-35.). All of this necessarily results in a structure incapable of functioning in the same manner as the claimed "tear-off section."

Conclusory expert testimony or argument cannot change any of this, as the district court expressly recognized. (*See e.g.* Appx40, Appx42.) Indeed, this Court's precedents required that the district court lend no weight to such conclusions, as "an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact" and "a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004).

Because the district court properly evaluated the undisputed evidence in conducting a function-way-result analysis regarding the "tear-off section" limitation, the Court should grant rehearing and

affirm the district court's grant of summary judgment of the '029

patent, on the basis that Edgewell's position vitiates the "tear-off

section" limitation and no reasonable juror could find that the

differences between the Second and Third Generation Cassettes and the

claimed invention in relation to that element are insubstantial.

Respectfully submitted,

/s/ TRAVIS W. MCCALLON
TRAVIS W. MCCALLON
LUKE MERIWETHER
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
(816) 292-2000
travis.mccallon@lathropgpm.com
luke.meriwether@lathropgpm.com
Counsel for Defendant-Appellee

# ADDENDUM

# United States Court of Appeals for the Federal Circuit

---

**EDGEWELL PERSONAL CARE BRANDS, LLC, INTERNATIONAL REFILLS COMPANY, LTD.,**
*Plaintiffs-Appellants*

**v.**

**MUNCHKIN, INC.,**
*Defendant-Appellee*

---

2020-1203

---

Appeal from the United States District Court for the Central District of California in No. 2:18-cv-03005-PSG-JPR, Judge Philip S. Gutierrez.

---

Decided: March 9, 2021

---

KIRK T. BRADLEY, Alston & Bird LLP, Charlotte, NC, argued for plaintiffs-appellants. Also represented by KEITH E. BROYLES, JAMES GRANT, JOSHUA MARK WEEKS, Atlanta, GA.

TRAVIS W. MCCALLON, Lathrop GPM LLP, Kansas City, MO, argued for defendant-appellee. Also represented by LUKE MERIWETHER.

---

Before NEWMAN, MOORE, and HUGHES, *Circuit Judges*.

MOORE, *Circuit Judge*.

Edgewell Personal Care Brands, LLC, and International Refills Company, Ltd. (collectively, Edgewell) sued Munchkin, Inc. in the Central District of California for infringement of claims of U.S. Patent Nos. 8,899,420 and 6,974,029. Edgewell manufactures and sells the Diaper Genie, which is a diaper pail system that has two main components: (i) a pail for collection of soiled diapers; and (ii) a replaceable cassette that is placed inside the pail and forms a wrapper around the soiled diapers. The '420 patent and the '029 patent relate to alleged improvements in the cassette design. *See, e.g.*, '420 patent at 2:18–32; '029 patent at Abstract. As relevant to this appeal, Edgewell accused Munchkin's Second and Third Generation refill cassettes, which Munchkin marketed as being compatible with Edgewell's Diaper Genie-branded diaper pails, of infringement. J.A. 18474.

In February 2019, the district court issued a claim construction order, construing terms of both the '420 patent and the '029 patent. Based on those constructions, Edgewell continued to assert literal infringement of the '420 patent, but only asserted infringement under the doctrine of equivalents for the '029 patent. Munchkin moved for, and the district court granted, summary judgment of noninfringement of both patents. *See Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*, No. 18-3005-PSG, 2019 WL 7165917 (C.D. Cal. Oct. 16, 2019) (*Summary Judgment Decision*). Edgewell appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1). For the reasons discussed below, we vacate-in-part, reverse-in-part, and remand.

## DISCUSSION

We review a district court's grant of summary judgment under the law of the regional circuit, here, the Ninth Circuit. *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353,

1356 (Fed. Cir. 2016). The Ninth Circuit reviews a district court's grant of summary judgment de novo. *Greater Yellowstone Coal. v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010). "[O]n appeal from a grant of summary judgment of non-infringement, we must determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement." *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1336 (Fed. Cir. 2008).

## I.     The '420 Patent

The '420 patent is directed to a cassette with a "clearance" located in a bottom portion of the cassette. *See e.g.,* '420 patent at Abstract. The written description contemplates that the cassette may be placed into a pail with an "interfering member" having "a shape that is complimentary to that of the cassette 30 with the chamfer clearance." *Id.* at 8:40–43. The claimed "clearance" thereby purportedly prevents users from installing the cassette upside down. *Id.* at 8:43–45. Claim 1 of the '420 patent is illustrative and recites:

> 1. A cassette for packing at least one disposable object, comprising:
>
> > an annular receptacle including an annular wall delimiting a central opening of the annular receptacle, and a volume configured to receive an elongated tube of flexible material radially outward of the annular wall;
> >
> > a length of the elongated tube of flexible material disposed in an accumulated condition in the volume of the annular receptacle; and
> >
> > an annular opening at an upper end of the cassette for dispensing the elongated tube such that the elongated tube extends

through the central opening of the annular receptacle to receive disposable objects in an end of the elongated tube,

wherein ***the annular receptacle includes a clearance in a bottom portion of the central opening***, the clearance extending continuously from the annular wall and radially outward of a downward projection of the annular wall, the clearance delimiting a portion of the volume having a reduced width relative to a portion of the volume above the clearance.

(emphasis added).

In its summary judgment order, the district court concluded that the parties "dispute[d] whether the term 'clearance' can cover circumstances where there is not actually space between a cassette" and another structure when the cassette is "normally positioned" in the pail. *Summary Judgment Decision*, 2019 WL 7165917, at *7. There was no dispute that the cassette itself (when not installed in the pail) contained a clearance. Rather, the dispute focused on whether the claims required a clearance space between the annular wall defining the chamfer clearance and the pail itself when the cassette was installed. The district court determined that "clearance" required space after cassette installation and construed clearance as "the space around [interfering] members that remains (if there is any), not the space where the interfering member or cassette is itself located upon insertion." *Id.* at *8.

Based on that construction, the district court granted Munchkin summary judgment of noninfringement of the '420 patent. The court concluded that there was no space between the cassette and the pail after the cassette was installed. *Id.* Edgewell challenges this determination on appeal, arguing that the district court erred in its summary judgment claim construction of "clearance." *Id.* at *7.

As an initial matter, Munchkin argues that we cannot review the court's summary judgment claim construction because it is the same as the district court's original construction of "clearance," which Edgewell does not dispute on appeal. We do not agree. As the district court recognized, its summary judgment order resolved a further claim construction dispute between the parties, adding a limitation not present in the original construction. *Summary Judgment Decision*, 2019 WL 7165917, at *7. The district court's original construction required only that the clearance prevent interference between the cassette and another structure; it did not require space between the cassette and the unclaimed structure after the cassette was installed. The district court's clarification that the "clearance" cannot be filled by an unclaimed interfering member, therefore, constitutes a separate claim construction subject to our review.

We review a district court's claim construction de novo except for underlying factual findings based on extrinsic evidence, which we review for clear error. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321–22, 332 (2015). An apparatus claim is generally to be construed according to what the apparatus is, not what the apparatus does. *See Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("apparatus claims cover what a device *is*, not what a device *does*" (emphases in original)). Thus, it is usually improper to construe non-functional claim terms in apparatus claims in a way that makes infringement or validity turn on the way an apparatus is later put to use. *See Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009) ("Construing a non-functional term in an apparatus claim in a way that makes direct infringement turn on the use to which an accused apparatus is later put . . . is inconsistent with the notice function central to the patent system.").

The parties do not dispute that the '420 patent claims are directed only to a cassette. Therefore, absent an

6      EDGEWELL PERSONAL CARE BRANDS v. MUNCHKIN, INC.

express limitation to the contrary, the term "clearance" should be construed as covering all uses of the claimed cassette. *See id.*; *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002) ( "a patent grants the right to exclude others from making, using, selling, offering to sale, or importing the claimed apparatus or composition for any use of that apparatus or composition"). The specification discloses multiple embodiments which discuss the cassette clearance. In one embodiment, "[i]t is observed that the movable portion 58 passes closely to the wall defining the chamfer clearance 41." '420 patent at 6:36–38. The term "passes closely" suggests that there would still be a space where the clearance is located even after the cassette is inserted into the pail. There are multiple other embodiments which suggest there would be no space after insertion (*i.e.*, that the clearance space would be filled by a complimentary structure in the pail itself). *See e.g.*, '420 patent at 3:5–9 ("[T]he tubular wall tapers in a downward direction, and the annular body has a corresponding frustoconical outer periphery for complementary engagement of the cassette in the holder."); 8:5–11 ("The tapered clearance 41' is used in conjunction with a tapered flange 44' in the holder 26 of the apparatus 10, as is clearly illustrated in FIG. 4 (i.e., the flange 44' defines an interference member of frustoconical shape). Accordingly, this complimentary shape ensures that the cassette 30' is properly oriented in the holder 26, otherwise the funnel 25 could not be installed properly on the top of the bin 12."); 8:40–45 ("[T]he holder 26 features an interfering member 70 that has a shape that is complementary to that of the cassette 30 with the chamfer clearance 41."). In nearly all of the disclosed embodiments, the specification suggests that the cassette clearance mates with a complimentary structure in the pail such that there is "engagement." The specification, taken as a whole, does not support the district court's construction which would preclude such engagement when the cassette is inserted into the pail. The purpose of the clearance in the bottom of the central

opening in the cassette is "to ensure that the cassette 30 is properly installed in the holder 26 when the apparatus 10 is in use." *Id.* at 5:14–15; *see also id.* at 6:38–44 ("If the chamfer clearance 41 were not provided, the cassette 30 would impede the movement of the movable portion 58. Accordingly, if the cassette 30 were installed upside down, the movable portion 58 would be prevented from moving along its path. Therefore, if a user person wants to use the cassette 30 properly, the cassette 30 must be oriented properly."); 8:9–11 ("[T]his complimentary shape ensures that the cassette 30' is properly oriented in the holder 26, otherwise the funnel 25 could not be installed properly on the top of the bin 12."). The cassette has a clearance that will ensure proper insertion whether a space remains after insertion or not. We thus conclude that the district court erred by adding this limitation into its construction. The clearance limitation is satisfied when the cassette itself is constructed with a clearance. The claim does not require a clearance after insertion; in fact, such a requirement would be at odds with many of the disclosed embodiments and is simply not required by the claims.

Accordingly, we hold that the district court erred in construing the term "clearance" on summary judgment in a manner dependent on the way the claimed cassette is put to use in an unclaimed structure. *See Paragon Sols.*, 566 F.3d at 1091. Because we hold that the district court erred in its construction of the term "clearance," we vacate the district court's grant of summary judgment of noninfringement of the '420 patent and remand.

## II.    The '029 Patent

The '029 patent is directed to a cassette with a cover extending over pleated tubing housed therein. '029 patent at Abstract. The cover includes a "tear-off" section that, when torn-off, leaves a peripheral gap to allow access to the pleated tubing. *Id.* at 1:63–67. Claim 1 of the '029 patent is illustrative and recites:

1. A cassette for use in dispensing a pleated tubing comprising:

> an annular body having a generally U shaped cross-section defined by an inner wall, an outer wall and a bottom wall joining a lower part of said inner and outer walls, said walls defining a housing in which the pleated tubing is packed in layered form;

> an ***annular cover extending over said housing; said cover having an inner portion extending downwardly and engaging an upper part of said inner wall of said body and a top portion extending over said housing; said top portion including a tear-off outwardly projecting section having an outer edge engaging an upper part of said outer wall of said annular body***; said tear-off section, when torn-off, leaving a peripheral gap to allow access and passage of said tubing therebetween; said downwardly projecting inner portion having an inclined annular area defining a funnel to assist in sliding said tubing when pulled through a central core defined by said inner wall of said body; and

> cooperating inter-engagement means on said upper part of said body and on opposite edges of said cover to lock said cover to said body.

(emphasis added).

The district court construed "annular cover" as "a single, ring-shaped cover, including at least a top portion and an inner portion that are parts of the same structure." J.A.

12. It construed "tear-off outwardly projecting section" as "a section initially formed as part of the same structure as the rest of the annular cover [and] which can be torn off" from the cover. J.A. 12–13. Lastly, it construed "engage"/"engaging" to mean "attach"/"attached to." J.A. 13–14.

Munchkin's accused Second and Third Generation cassettes each include a two-part cover. The accused annular cover of the Second Generation cassettes includes an inner piece of molded plastic and an outer piece of shrink wrap that is designed to be torn off by the user before installing the cassette. Munchkin's Third Generation cassettes likewise include an inner piece of molded plastic but use a plastic "blister cap" instead of shrink wrap. Therefore, after the district court construed "annular cover" and "tear-off" section as being part of the same structure, Edgewell limited its infringement allegation of the '029 patent to the doctrine of equivalents. In granting Munchkin summary judgment of noninfringement, the district court determined that no reasonable jury could find that Munchkin's Second and Third Generation Cassettes satisfy the '029 patent's "annular cover" and "tear-off section" limitations under the doctrine of equivalents because that "would effectively vitiate the 'tear-off section' limitation." *Summary Judgment Decision*, 2019 WL 7165917, at *5. Edgewell challenges this determination on appeal, arguing that (1) the district court erred in construing the terms "annular cover," "tear-off section," and "engage" and that (2) even under the district court's constructions, the district court erred in holding that the doctrine of equivalents would vitiate the claim elements.

We hold that the district court correctly construed "annular cover" and "tear-off section" as part of a single structure. The claims recite "an annular cover" having "an inner portion" and a "top portion" that includes a tear-off "section." *See, e.g.*, '029 patent at claim 1. The plain language of the claims, therefore, supports construing the annular

cover as a single-structure comprising multiple "portions" or "sections." The written description likewise supports the court's construction, describing the claimed cassette as having two parts: an "annular body" and an "annular cover." *See id.* at 2:30–40, 51–56; *see also id.* at Fig. 1 (depicting the annular cover as a single structure). We see no error in the district court's construction of "annular cover" and "tear-off section" as part of a single structure.

The district court also correctly construed "engage" to mean "attach." The claims recite an "annular cover . . . having an inner portion extending downwardly and engaging an upper part of said inner wall of said body." *Id.* at claim 1. As Edgewell acknowledges, the plain language of the claim requires more than mere contact; it requires at least meaningful contact or connection. Appellant's Reply Br. 30. The written description likewise requires some form of attachment, describing the annular body as "lockingly engaged" or "snappingly engag[ed]" to the annular cover. '029 patent at 3:36–40. We see no error in the district court's construction of "engage" to mean "attach."

We agree with Edgewell, however, that the district court erred in granting summary judgment of noninfringement of the '029 patent under the doctrine of equivalents on the basis that the claimed "annular cover" and "tear-off" would be vitiated and rendered meaningless. *Summary Judgment Decision*, 2019 WL 7165917, at *6. "Under the doctrine of equivalents, an infringement theory . . . fails if it renders a claim limitation inconsequential or ineffective." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016). This vitiation doctrine ensures the application of the doctrine of equivalents does not "effectively eliminate [a claim] element in its entirety." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). Claim vitiation is a legal determination that "the evidence is such that no reasonable jury could determine two elements to be equivalent." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356–57 (Fed. Cir. 2012);

*see also UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1283 (Fed. Cir. 2019) (Vitiation "is not an exception or threshold determination that forecloses resort to the doctrine of equivalents, but is instead a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted."). We review de novo a district court's application of claim vitiation. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320–21 (Fed. Cir. 2003).

Although the district court correctly construed "annular cover" as being a single structure, the district court erred in concluding that Edgewell's theory of infringement under the doctrine of equivalents vitiates or renders meaningless the "annular cover" claim element. Vitiation has its clearest application "where the accused device contain[s] the antithesis of the claimed structure." *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006). But as we explained in *Deere & Co.*, 703 F.3d at 1356–57, "[c]ourts should be cautious not to shortcut this inquiry by identifying a 'binary' choice in which an element is either present or 'not present.'" *See also Cadence Pharms. Inc. v. Exela PharmaSci Inc.*, 780 F.3d 1364, 1372 (Fed. Cir. 2015) ("The determination of equivalence depends not on labels like 'vitiation' and 'antithesis' but on the proper assessment of the language of the claimed limitation and the substantiality of whatever relevant differences may exist in the accused structure."). Applying these concepts to the facts of this case, we conclude that the district court erred in evaluating this element as a binary choice between a single-component structure and a multi-component structure, rather than evaluating the evidence to determine whether a reasonable juror could find that the accused products perform substantially the same function, in substantially the same way, achieving substantially the same result as the claims. *See, e.g., Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 967 F.3d 1353, 1368 (Fed. Cir. 2020) (limiting question of

infringement under doctrine of equivalents to a "binary choice between 'flourinated' and 'non-flourinated' micro-channels" was improper where a reasonable juror could have found negligibly-flourinated microchannel performed substantially the same function).

The element at issue is the claimed "annular cover." Edgewell's expert, Mr. Jobin, opined that the accused products' annular covers perform the same function, in the same way, to achieve the same result as the claimed annular cover.[1] J.A. 2300–01 (discussing the Second Generation cassettes); J.A. 2316–17 (discussing the Third Generation cassettes). Specifically, he opined that the annular cover of Munchkin's Second Generation cassettes provides the same function by extending over the housing of the pleated tubing while still providing a means of access thereto. J.A. 2300. He opined that it performs the function in the same way, as it "is comprised of a plastic portion that engages the inner wall [of the annular body], and shrink-wrap that engages the outer wall and may be torn-off." J.A. 2301. He also opined that the result is the same because "when the shrink-wrap is torn off of the housing, a peripheral gap is exposed that allows the tubing to be accessed and with-drawn from the housing through the peripheral gap." *Id.*

Likewise, Mr. Jobin opined that the annular cover of Munchkin's Third Generation cassettes performs the same function as the claimed annular cover because the accused cover "extends over the annular housing and retains the pleated tubing stored within, but still allows for access to the pleated tubing." J.A. 2317. He opined that it performs the function in the same way, because it "is comprised of a plastic portion that engages the inner wall, and a blister

---

[1]    The expert opined that the accused cassettes per-form the same function-way-result, even though the doc-trine of equivalents analysis requires only that they be substantially the same.

cap that engages the outer wall and may be torn-off." *Id.* He also opined that the function is the same because "when the blister cap is torn-off of the housing, a peripheral gap is exposed that allows the tubing to be accessed and withdrawn from the housing." *Id.* Edgewell also presented Munchkin fact witness deposition testimony to support Mr. Jobin's opinions. *See, e.g.*, J.A. 3464–65 (testimony that the blister cap and shrink wrap "keeps the consumer from touching it or pulling out the film" and that consumers "have to remove the packaging to access" the tubing); *see also* J.A. 2300–01 (Jobin Expert Report citing Munchkin fact witness deposition testimony); J.A. 2316–17 (same).

This detailed application of the function-way-result test, supported by deposition testimony from Munchkin employees, is sufficient to create a genuine issue of material fact for the jury to resolve and, therefore, is sufficient to preclude summary judgment of noninfringement under the doctrine of equivalents. Accordingly, we reverse the district court's judgment of noninfringement of the '029 patent and remand for further proceedings consistent with our opinion.

## CONCLUSION

Because the district court based its grant of summary judgment of noninfringement of the '420 patent on an erroneous construction, we vacate that judgment and remand. Because the district court erred in granting Munchkin summary judgment of noninfringement of the '029 patent, we reverse that judgment and remand.

## VACATED-IN-PART, REVERSED-IN-PART, AND REMANDED

## COSTS

Costs to Edgewell.

# United States Court of Appeals
# for the Federal Circuit

---

**EDGEWELL PERSONAL CARE BRANDS, LLC,
INTERNATIONAL REFILLS COMPANY, LTD.,**
*Plaintiffs-Appellants*

**v.**

**MUNCHKIN, INC.,**
*Defendant-Appellee*

---

2020-1203

---

Appeal from the United States District Court for the Central District of California in No. 2:18-cv-03005-PSG-JPR, Judge Philip S. Gutierrez.

---

## JUDGMENT

---

THIS CAUSE having been considered, it is

ORDERED AND ADJUDGED:

**VACATED-IN-PART, REVERSED-IN-PART, AND REMANDED**

ENTERED BY ORDER OF THE COURT

March 9, 2021                    /s/ Peter R. Marksteiner
                                 Peter R. Marksteiner
                                 Clerk of Court

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2020-1203

**Short Case Caption:** Edgewell Personal Care Brands v Munchkin, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

   X  the filing has been prepared using a proportionally-spaced typeface and includes <u>3,687 </u>words.

_____the filing has been prepared using a monospaced typeface and includes___lines of text.

_____the filing contains___pages /___ words /___lines of text, which does not exceed the maximum authorized by this court's order (ECF No._____).

| | |
|---|---|
| <u>April 7, 2021</u> | (s) <u>/s/ Travis W. McCallon</u> |
| Date | Travis W. McCallon |
| | Counsel for Defendant-Appellee |